Nancy L. **BRYANT**, Plaintiff–
Appellant,

v.

Mel **MARTINEZ**, Secretary of the Department of Housing and Urban Development, Defendant–Appellee.

No. 00–6035.

United States Court of Appeals,
Sixth Circuit.

Sept. 5, 2002.

Before BOGGS and MOORE, Circuit Judges; and RUSSELL, District Judge.*

PER CURIAM.

Nancy Bryant appeals the district court's summary judgment in favor of her employer, the Department of Housing and Urban Development (HUD),[1] on her hostile work environment claim. Bryant, a white female, argues that there was at least a genuine issue of material fact that she was subject to discriminatory harassment by her direct supervisor, a black male. Accordingly, Bryant argues that the district court should have permitted the hostile work environment claim to go to trial. The district court denied HUD's motion for summary judgment on Bryant's sexual discrimination and retaliation claims. After a three-day trial, the jury found for HUD on both claims. Bryant contends that the district court erred by refusing to exclude from evidence in the jury trial two administrative decisions denying her claims for employment benefits.

I

Bryant began working for HUD in 1988. By 1994, Bryant had been promoted to Chief of the Production Branch at HUD's Memphis office. In April 1996, Benjamin Davis, a black male, began as the new director of HUD's Memphis office and, in that position, became Bryant's immediate supervisor.

Davis allegedly began a campaign of harassing conduct, including (1) "ignoring" Bryant when she was in the room; (2) meeting with Bryant's staff members without her knowledge; (3) meeting with two other branch chiefs to discuss office policy without inviting Bryant; (4) refusing to return Bryant's phone calls; (5) respond-

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1. The original defendant in this case was Andrew Cuomo, who was the Secretary of the Department of Housing and Urban Development when this case was filed. Mel Martinez, who is the current secretary of HUD, has been substituted as the defendant pursuant to Fed.R.Civ.P. 25(d)(1).

ing to Bryant's questions in staff meetings in a "disparaging manner;" (6) "humiliating" Bryant in front of her subordinates; and (7) refusing to respond to Bryant's requests for guidance.

There is no evidence in the record that Davis treated Bryant any differently than other employees under his direct supervision. There were two other branch chiefs—a black female and a white male—under Davis's direct supervision. Bryant testified that in August 1996 she asked Davis orally whether he was treating her differently and that "he refused to answer." Later that month, Bryant contacted the human resources office to complain of Davis's discriminatory behavior. On August 26, 1996, Bryant sent a letter directly to Davis, alleging that Davis had been discriminating against her because of her race and sex.

On August 30, 1996, Davis reassigned Bryant to be Single Family Housing Specialist in a letter that extensively explained his reasons. The new position was at the same grade and pay level. When she returned from leave immediately after the reassignment, she discovered that she had been moved to an office with poorer computer and telephone equipment and severely worn office furniture. Bryant left again on unpaid leave, working only two days in the reassigned position. In March 1998, HUD terminated her employment for excessive unauthorized absences.

Bryant sued HUD, claiming that Davis's treatment of her constituted racial and sexual discrimination, retaliation for her discrimination complaints, and discriminatory harassment creating a hostile work environment. The district court granted HUD summary judgment on Bryant's hostile work environment claim, but permitted the other claims to go to trial. At trial, the district court granted HUD's motion to dismiss Bryant's race discrimination claim,

but submitted her sex discrimination and retaliation claims to the jury. The jury found for HUD on all counts. Bryant does not appeal the district court's granting of HUD's motion to dismiss her race discrimination claim.

Before trial, Bryant presented a motion *in limine* to the court, seeking the exclusion of the administrative decisions of the Department of Labor Office of Workers' Compensation Programs (OWCP) and the Office of Personnel Management (OPM). Bryant had petitioned these agencies for benefits, claiming that Davis's discrimination and harassment had caused her to develop a debilitating emotional condition, preventing her from returning to work. Both the OWCP and the OPM denied her claims for benefits, finding that her condition did not prevent her from returning to work and that, in any event, her condition was not caused by the conditions at HUD. Bryant claimed that the decisions' probative value was outweighed by their unfair prejudicial effect. *See* Fed.R.Evid. 403. The district court disagreed and denied her motion *in limine*.

Bryant now appeals the district court's summary judgment for HUD on her hostile work environment claim and its denial of her motion *in limine*.

## II

This case presents two questions. First, did Bryant establish a genuine issue of material fact regarding whether Davis and HUD subjected her to a hostile work environment through discriminatory harassment? Second, did the district court abuse its discretion by declining to exclude any reference to the administrative decisions finding that her alleged emotional condition was both not terribly serious and not caused by the conditions at HUD? We

consider each of these questions separately.

## A. Bryant's Hostile Work Environment Claim

In order to maintain an action for a hostile work environment under the discrimination laws, the employee must demonstrate that: (1) she was a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on her race or sex; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures. *See Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir.1997). The Supreme Court has elaborated on what type of conduct can constitute harassment and form the basis for a hostile work environment claim. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail, the employee must show conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." *See ibid.; Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Conduct that is "merely offensive" will not suffice to support a hostile work environment action. *See Harris*, 510 U.S. at 21.

The alleged conduct of Davis falls well short of establishing even a genuine issue of fact as to whether Bryant was subjected to a hostile work environment through discriminatory harassment. We note at the outset that Bryant's reassignment cannot be considered as discriminatory harassment. The jury's verdict for HUD on Bryant's retaliation claim precludes a finding that the reassignment was motivated by discriminatory animus. The jury was specifically asked whether Bryant's sex "was a motivating factor in HUD's decision to reassign her to the position of housing specialist." The jury answered no. At least with regard to the reassignment, Bryant cannot establish the gender-based motivation element of her harassment case because the jury's verdict is *res judicata* on that question.

■ With regard to the other alleged conduct, none of it is "sufficiently severe or pervasive to alter the conditions of the victim's employment." These "perceived slights" by Davis, from not being invited to assorted meetings, to not getting some of her phone calls returned, simply are not severe enough to constitute harassment. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir.2000). Being moved to a new office, which allegedly was not as nice, appears more a symptom of her reassignment than anything else.

■ More important than the lack of severity of the alleged incidents of harassment is the complete lack of evidence regarding *why* Davis undertook the alleged conduct. There is no evidence that the alleged conduct was undertaken "because" of Bryant's race or sex. Our harassment jurisprudence requires that we distinguish between harassment and discriminatory harassment. *See Bowman*, 220 F.3d at 464. Thus, an employee must demonstrate that the allegedly harassing conduct was motivated by a bias towards the employee's protected class. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

The district court determined that there was insufficient evidence that Davis's conduct was based on Bryant's gender to survive summary judgment. We have previously held that certain "gender-specific epithets" can be sufficient to create a genuine issue of material fact on whether otherwise neutral conduct towards an em-

ployee was based on her gender. *Williams v. General Motors Corp.*, 187 F.3d 553, 565–66 (6th Cir.1999). In this case, Bryant presents her own deposition testimony. There, she claims that, in a response to a comment *by Bryant* that another female supervisor was "combative," Davis told her that "in his experience, women, in general, did not do well in management positions." Later in that conversation, Davis said that he had a method for "getting rid of troubled employees." This exchange occurred within one month of Davis becoming Bryant's supervisor. Bryant argues that this isolated comment is sufficient evidence of Davis's gender-based motivation to survive summary judgment. This district court disagreed, holding that the comment "does not reach the level of egregiousness that creates an inference that the neutral acts were based on gender animus."

We agree with the district court. First, Davis's comment was not even directed at Bryant, but instead towards a third party whom they were collectively criticizing. We have held in the past that the gender-based comments are of diminished probative value when they are not directed at the plaintiff. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 761 (6th Cir.2000) (distinguishing the epithets in *Williams* because they were specifically directed at the plaintiff). Second, the comment does not establish any gender-based animus on Davis's part. At most, the comment reflects Davis's opinion that some women he has encountered have not been good managers. The comment does not suggest that he seeks to undertake conduct adverse to female employees *because* they are women. This single comment is simply not of the degree and frequency of gender-based commentary that we have held sufficient to defeat summary judgment for lack of evidence of motivation. *See Williams*, 187 F.3d at 566 (relying on exceedingly strong and frequent anti-female epithets to bar summary judgment on the motivation behind the harassing conduct).

There is no evidence of Davis's distaste for white employees in the record. The district court's summary judgment on the racial element of Bryant's harassment claim is correct.

The mere circumstance that Davis was a black male and the alleged victim was white female will not suffice to establish discriminatory intent. *Williams v. General Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir.1999). There is no evidence on which a reasonable jury could determine that Bryant was treated as alleged because of her race or sex, or that Davis did not invite her to a division head meeting because it did not concern her department, or that Davis did not return her phone calls because he was too busy, or that Davis talked to her staff because he was concerned about the way she was treating them, or that Davis did all of these things because he simply did not personally like Bryant. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding that harassment motivated by personal dislike for an employee is not actionable under the discrimination laws). To avoid summary judgment, Bryant need not prove Davis's motivation, but she should at least provide some evidence of discrimination—and we can find none.

We, therefore, affirm the district court's summary judgment for HUD on Bryant's hostile work environment claim.

**B. Bryant's Motion *in Limine***

█ We will overturn a district court's refusal to exclude evidence only if the district court abused its discretion. *Morales v. American Honda Motor Co.*, 151 F.3d

500, 515 (6th Cir.1998). Bryant claims that the administrative decisions were inadmissible under Fed R. Evid. 403 because their probative value was outweighed by their prejudicial effect. In short, Bryant claims that the jury might have inferred that she was in the habit of making specious employment claims because the administrative panels rejected her claims for benefits. She claims no other legal basis on which reports should have been excluded, as well she should not. *See* Fed R. Evid. 803(8) (providing an exception to the hearsay rule for the factual findings of administrative agencies).

We accord the district court a higher degree of deference in Fed.R.Evid. 403 determinations than other evidentiary rulings. *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991). The district court, having heard all the evidence, is particularly competent and much better situated than an appellate court on the cold record to undertake the delicate weighing of probative value and unfair prejudicial effect. *United States v. Layne,* 192 F.3d 556, 573 (6th Cir.1999). In this case, Bryant concedes that the evidence is relevant, aside from any possible unfair prejudicial effect. HUD contends that the reports were necessary to rebut Bryant's claim for damages for emotional distress. The factual findings of the OWPC and the OPM detailed the weakness of her claim for a distressed emotional condition. Although it may be difficult for Bryant to conceive of the relevance of damages given the jury's verdict denying liability, the administrative findings are quite probative of this particular element of damages. If Bryant had wanted to keep the reports out, she should not have claimed damages for emotional distress. We cannot find that the district court abused its discretion in denying Bryant's motion *in limine.*

## III

Having also held that the district court properly granted HUD summary judgment on Bryant's hostile work environment claim, we AFFIRM the district court's judgment.